ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 27 2011

JAMES N. HATTEN, Clerk
By: Deputy Clerk

| | | |
|---|---|---|
| CHEMENCE MEDICAL PRODUCTS, INC. | : | -RLV |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION FILE NO. |
| JAMES QUINN | : | 1:11-CV-1366 |
| Defendant. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Chemence Medical Products, Inc., ("Chemence"), hereby states its complaint for declaratory judgment against Defendant James Quinn ("Quinn") as follows:

## THE PARTIES

1.

Plaintiff Chemence is an Ohio corporation, which maintains its principal place of business at 185 Bluegrass Valley Parkway, Alpharetta, Georgia 30005.

2.

Defendant Quinn is a resident and citizen of the state of California.

## JURISDICTION AND VENUE

3.

1

This Court is empowered to render a declaratory judgment in this case pursuant to 28 U.S.C. § 2201 *et seq.* (Federal Declaratory Judgment Act).

4.

This Court has personal jurisdiction over the Quinn pursuant to the Georgia Long-Arm Statute O.C.G.A. § 9-10-91.

5.

This Court has personal jurisdiction over the Quinn pursuant to the Consulting Agreement ("Agreement") that is the subject matter of this case. In section 10.5, Quinn has consented to the non-exclusive jurisdiction and venue in any court of competent jurisdiction in either Forsyth or Fulton counties in Georgia, in any action or proceeding arising out of or related in any way to this Agreement.

6.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (diversity) by virtue of the diversity of citizenship of the parties.

7.

The amount in controversy in this case, exclusive of interest and costs, exceeds $75,000.00.

8.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b). A substantial part of the events or omissions giving rise to the claim occurred in this District, as well as many acts and transactions.

## FACTS

9.

Chemence is and at all relevant times has been engaged in the business of researching, developing, manufacturing, marketing and selling specialty performance chemical products known as cyanoacrylates ("CA"), which are superglues, in the medical field.

10.

Quinn is a medical doctor that has worked with and consulted for businesses in the medial CA field.

**I. The Agreement.**

11.

The parties entered into the Agreement on or about January 31, 2004.

12.

Pursuant to Article 1, the Agreement became effective on February 1, 2004 and continued in effect for a period of three (3) years. Commissions set forth in the Agreement survived the expiration of the Agreement.

13.

Pursuant to section 2.1, Quinn agreed to provide consulting services in the field of medical adhesive technology as requested by Chemence ("Services") on such projects as are agreed to by Quinn.

14.

Pursuant to section 3.1, in consideration for the Services to be performed by Quinn, Chemence agreed to pay him a consulting fee of $4,000.00 per month.

15.

Chemence agreed to pay Quinn a commission on the sales of Chemence products for which Quinn has provided consulting Services that result in new customers, new applications, and/or increased sales to current customers.

16.

The commission is payable for the lesser of the commercial life of the product or ten years.

17.

The commission is payable to Quinn for each calendar quarter (with each calendar quarter to be considered independently) in which the gross Override Calculation on Net Sales, as defined in the Agreement, exceeds the amount of consulting fees paid to Quinn for that quarter and only to the extent that the

override calculation exceeds such amount. The Override Calculation shall be computed by multiplying the Net Sales, as defined in the Agreement, by the Override Factor below. The following criteria apply to calculation of the commission.

Override Factor

| | |
|---|---|
| Net Sales with a less than a 50% Gross Margin | -0- |
| Net Sales with a 50% to 75% Gross Margin | 2.5% |
| Net Sales with a 76% to 90% Gross Margin | 5.0% |
| Net Sales with over a 90% Gross Margin | 7.5% |

"Gross Margin" shall be calculated as Net Sales – (Cost of direct raw materials + Cost of direct labor to manufacture same).

18.

Pursuant to section 7.1 the Agreement shall continue in force for a period of three (3) years.

## II. History.

19.

From the beginning, Quinn's Services pursuant to the Agreement involved human topical tissue applications indicated for use as a tissue adhesive using CA, which shall hereinafter be referred to as the "Products."

20.

Chemence currently sells and markets Products under the trademarks Derma+Flex® and Sure+Close® and through a private label.

21.

Chemence filed an Initial Registration of Device Establishment as a manufacturer and a Device Listing as a liquid occlusive wound bandage with the U.S. Food and Drug Administration ("FDA") on or about July 20, 2004 under the proprietary names Flex-Aid and DermaFlex.

22.

The Derma+Flex® trademark application was filed by Chemence with the United States Patent and Trademark Office ("USPTO") on August 27, 2004 in International Class 005 for liquid wound closure.

23.

The Sure+Close® trademark application was filed by Chemence with the USPTO on September 19, 2006 in International Class 005 for medical adhesives for binding wounds.

24.

From 2004 through 2010, there have been various FDA filings by Chemence regarding the Products in order to be in a Regulatory Class II indication for use as a tissue adhesive.

25.

The FDA made a decision on July 28, 2010 that the Products were substantially equivalent to be legally marketed as a predicate device in Regulatory Class II indications for use as a tissue adhesive intended for topical application only.

26.

On or about April 14, 2011, Quinn resigned as a consultant for Chemence.

27.

Quinn has been paid by Chemence $4,000.00 per month from February 1, 2004 through April 30, 2011.

28.

Prior to 2011, the Net Sales of Products were minimal and the Commission due Quinn was below the $4,000.00 per month payment made by Chemence to Quinn.

29.

Starting in 2011, Quinn may be due commissions on the Net Sales of Products, the exact amount and Override Factor are unknown, depending upon how commissions are calculated, which is in dispute.

30.

Plaintiff is calculating the costs of direct raw materials and direct labor in accordance with generally accepted accounting principles that includes all costs for direct raw materials and direct labor to manufacture Products, while Quinn allegedly does not include all of these costs in his calculation in order to determine the Gross Margin for the Override Factor, if any, thereby claiming the commission percentage to be higher contrary to the terms of the Agreement and intention of the parties when the Agreement was signed.

31.

Chemence is only obligated to pay Quinn commissions on Products for the lesser of the commercial life or ten years from February 1, 2004, while Quinn alleges Chemence owes him commissions for ten years from on or about July 28, 2010, which is the date the FDA made its decision regarding the Products being a Regulatory Class II medical device, which is contrary to the terms of the Agreement and intention of the parties when the Agreement was signed.

**III.  Relief Sought.**

32.

Plaintiff seeks a declaratory judgment from this Court regarding the terms of the Agreement relating to the 1) commission calculation and amount due Quinn; and 2) termination date for commissions.

33.

There is an actual controversy between the parties. The dispute and controversy is a justiciable matter that is not speculative and the resolution by this Court will determine the rights and interests of the parties and avoid potential future litigation or render the litigation more efficient.

34.

All parties are interested in this matter, and the determination under a writing or instrument by this Court will determine the obligations of Chemence and Quinn.

35.

This declaratory judgment action is properly filed considering the special nature of the relationship among the parties and the matters asserted, as well as the potential liability and obligations.

36.

A declaratory judgment is the appropriate mechanism for resolving the obligations of the Parties in this matter.

WHEREFORE, Plaintiff requests the following:

1. a declaration that Quinn's a) commissions are to be determined in accordance with generally accepted accounting principles, which includes all costs for direct raw materials and direct labor to manufacture Products; and b) termination date for commissions is January 31, 2014;

2. costs of suit incurred herein, including reasonable attorneys' fees; and

3. such other and further relief as this Court may deem proper.

*[signature]*

Robert D. Wilson
Attorney for Plaintiff
Georgia Bar No. 768891

Robert D. Wilson Co., L.P.A.
16716 Chillicothe Road, Suite 100
Chagrin Falls, Ohio 44023-4529
Telephone:  440-708-0445
Facsimile:   440-708-0511
E-mail:  rdwilsonco@gmail.com